IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ROBERT PESCHKO, JR., ROBERT REILLY,

               Plaintiffs,

     v.

CITY OF CAMDEN, <u>et</u> <u>al.</u>,

               Defendants.

STEVEN HUGG,

               Plaintiff,

     v.

CITY OF CAMDEN, <u>et</u> <u>al.</u>,

               Defendants.

HON. JEROME B. SIMANDLE

CIVIL NO. 02-5771

**<u>OPINION</u>**

APPEARANCES:

Michael William Kahn, Esq.
LAW OFFICES OF MICHAEL W. KAHN
1702 Haddonfield Berlin Road
Cherry Hill, NJ 08003
    Attorney for Plaintiffs Robert Peschko, Jr.
    and Robert Reilly

David W. Sufrin, Esq.
Saul J. Steinberg, Esq.
SUFRIN, ZUCKER, STEINBERG, SONSTEIN & WIXTED, PC
Parkade Building
519 FEDERAL STREET
Suite 503
Camden, NJ 08103
    Attorney for Plaintiff Steven Hugg

Lewis Wilson
City Attorney for the City of Camden
By:  Felix Gonzalez
     Assistant City Attorney
OFFICE OF CITY ATTORNEY
4th Floor – City Hall
520 Market Street
P.O. Box 95120
Camden, NJ 08101
     Attorney for Defendants City of Camden and Camden City
     Police Department

Brian Stephen O'Malley, Esq.
607 White Horse Pike
Haddon Heights, NJ 08035
     Attorney for Defendant Robert Allenbach

Ralph Raymond Kramer, Esq.
605 White Horse Pike
Haddon Heights, NJ 08035
     Attorney For Defendant David Borodziuk

Charles F. Blumenstein, III, Esq.
GREEN, LUNDGREEN & RYAN, PC
1010 Kings Highway South
Building Two
Cherry Hill, NJ 08034
     Attorney for Defendant George A. Reese

Emmett E. Primas, Jr., Esq.
The Heard Building
20 East Centre Street
Woodbury, NJ 08096
     Attorney for Defendant Christopher Frucci

Randy P. Catalano, Esq.
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
     Attorney for Defendant Jeffrey Frampton

Regina Waynes Joseph, Esq.
320 So. Harrison Street
16th Floor
East Orange, NJ 07018
     Attorney for Defendant John Martinez

Cheryl L. Cooper, Esq.
HOLSTON, MACDONALD, UZDAVINIS & ZIEGLER, PC
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
     Attorney for Defendant Valentine Uff

**SIMANDLE**, U.S. District Judge:

On July 20, 2002, Plaintiffs attended a Phil Lesh and
Friends concert at the Tweeter Center in Camden, New Jersey.
Plaintiff Peschko arrived to the Tweeter Center at approximately
3:00 P.M., well in advance of the scheduled 7:30 P.M. start time,
and remained in the parking lot for a short while after the
concert let out at roughly 11:30 P.M.  Peschko had been drinking
throughout the day, and had taken several "hits" of nitrous oxide
after the concert.[1]  He was taking one of those hits when several
officers approached him.  The events that followed give rise to
this litigation.

Plaintiffs filed this action under 42 U.S.C. § 1983, the New
Jersey Constitution, and New Jersey state law.[2]  The matter is

_____

[1] Nitrous oxide, also referred to as "laughing gas," "hippy
crack," "cartridges," or "whippets," may cause a person to have
slurred speech, difficulty maintaining balance, be slow to
respond to questions, be immune to pain, loud noises and speech,
and lapse into unconsciousness.  Mixing nitrous oxide with
alcohol can lead to highly unpredictable effects.  <u>See</u>
http://www.thesite.org/drinkanddrugs/drugsafety/drugsatoz/nitrous
oxide; http://www.cganet.com/N2O/factsht.asp.

[2] Plaintiffs Peschko and Reilly filed a complaint separately
from Plaintiff Hugg.  The actions were later consolidated.
Plaintiff Reilly has voluntarily withdrawn all claims against
Defendants Frucci [Docket Item 57], Frampton [Docket Item 67],

3

currently before the Court upon the motions for summary judgment by Defendants Frucci, Martinez, Frampton, Uff, Allenbach, City of Camden, and the City of Camden Police Department ("Camden Police Department" or "Department").  For the following reasons, the motions will be granted in part and denied in part.

## I.   BACKGROUND

On July 20, 2002, Plaintiffs attended a Phil Lesh and Friends concert at the Tweeter Center in Camden, New Jersey. Plaintiff Peschko arrived to the Tweeter Center at approximately 3:00 P.M., and following the concert remained in the parking lot with some friends, including Plaintiff Hugg, while the lot emptied.  By that time, Peschko had consumed over the course of the day a total of 6 or 7 12-ounce beers and part of a strawberry daiquiri.  Additionally, Peschko had taken several "hits" of nitrous oxide.[3]  Peschko was holding a "nitrous balloon" in each hand when five or six police officers approached him.[4]  (Peschko Dep. Tr. at 41:2-6; Hugg Dep. Tr. at 46:19-47:12.)

---

Martinez [Docket Item 52] and Uff [Docket Item 61].  Plaintiff Hugg has voluntarily dismissed all claims against to Defendants Frucci [Docket Item 65], Martinez [Docket Item 44] and Uff [Docket 71].

[3] Plaintiff maintains that he was not intoxicated when he first ingested the nitrous.  (Peschko Dep. Tr. at 38:19-23.)

[4] The Court's factual recitation here are limited to the events involving Plaintiffs Peschko and Reilly, as Plaintiff Hugg has not opposed the instant motions nor is there any evidence in the record shedding light on his factual allegations.

A.   <u>Plaintiff Peschko</u>

As the officers approached, they split up and three started walking directly towards Peschko.  At that point, according to Plaintiff, Officer Borodziuk told him to get rid of the balloons, which he did, but not before taking a "small hit."  (Peschko Dep. Tr. at 41:2-6.)  Plaintiff maintains that Officer Borodziuk then walked up and said: "That hit just cost you a lot of money mother fucker," at which point Borodziuk hit Peschko over the head with his baton.[5]  (<u>Id.</u> at 42:10-20; Hugg Dep. Tr. at 47:23-25.)

Then, Peschko maintains, as Officer Borodziuk attempted to strike him again, Peschko grabbed the baton with his left hand and pushed the officer's chest away with his right hand.  (<u>Id.</u> at 42:22-25, 44:6-8; Hugg Dep. Tr. at 49:1-10.)  Plaintiff then said to the officer: "I . . . didn't do nothing wrong, what the hell are you hitting me for."  (<u>Id.</u>)  The two then "stumbled" to the ground, Plaintiff landing on his knees.  According to Peschko, five or six other officers then jumped on top of him.  While on the ground, Plaintiff claims he was struck in his legs and head approximately fifty times.  (Peschko Dep. Tr. at 57:24-25.)  Plaintiff Hugg, who testified that he was standing roughly twenty-five feet from where Peschko was being arrested,

---

[5] Judging from an amateur video of the events submitted to the Court by Plaintiffs, the batons being carried by the officers ranged between two and three feet long, each measuring approximately two inches in diameter.

corroborates Peschko's account.  (Hugg Dep. Tr. at 56:25-57-5; DellaBarba Dep. Tr. at 11:18-12:18.)  Peschko has identified officers Borodziuk, Martinez, Frucci and Reese as among those involved in the incident.  (See also DellaBarba Dep. Tr. at 12:11-18.)  According to Peschko, the incident lasted roughly one and a half to two minutes.

As he was being handcuffed, Plaintiff claims that the officers sprayed pepper spray in his eyes.  (Peschko Dep. Tr. at 59:4-60:13.)  An amateur videotape reveals that Peschko was lying on his stomach as the officers attempted to secure the handcuffs. While lying face down on the ground, Officer Martinez executed three "knee-strikes" to Plaintiff's lower-right side.  Defendant Martinez testified that the knee-strikes were necessary to subdue Plaintiff because he was actively struggling and resisting. (Martinez Dep. Tr. at 116:10-13.)  Plaintiff testified, however, and the video seems to corroborate, that Peschko was lying motionless on the ground as these events transpired.

Eventually, the officers handcuffed Peschko and then, according to Plaintiff, sprayed him again with pepper spray.[6] While the officers were placing the handcuffs on Plaintiff, Officer Frucci placed his knee on Plaintiff's neck to keep him

---

[6] Officer Martinez admits to having sprayed Peschko with pepper spray before he was handcuffed, but denies spraying him again after he was handcuffed.  (Martinez Dep. Tr. at 106:6-10.)

secure on the ground.[7]   (Frucci Dep. Tr. at 46:6-8; Hugg Dep. Tr. at 60:21-24; Reilly Dep. Tr. at 50:8-17.)   Once he was handcuffed, the officers assisted Plaintiff to his feet and walked him to the paddy wagon.  As Plaintiff was being escorted, he claims an officer punched him in the back of the head.  (Id. at 56:21-67:23.)   According to Peschko, Plaintiffs Reilly and Hugg were in the paddy wagon in custody by the time he was put inside.[8]  (Id. at 67:24-68:2.)

Plaintiff was later charged with the following crimes in connection with the incident: disarming a law enforcement officer, 2nd degree; resisting arrest, 3rd degree; aggravated assault on a police officer, 3rd degree; and inhaling a toxic chemical.  All charges were ultimately dismissed on July 21, 2005.  (Pl. Opp. Br. ¶ 13.)  Peschko claims he suffered the following injuries related to the July 20th events: a broken right patella, two broken ribs, head lacerations, liver injury, back and neck damage, and general aches and pains.[9]

---

[7] Frucci testified that he placed his knee not on Plaintiff's neck but, rather on the center of his back.  (Frucci Dep. Tr. at 46:6-18.)  The video clearly shows the officer's knee on the back of Peschko's neck.

[8] Plaintiff Reilly testified that Peschko and Hugg were in the paddy wagon by the time he was put in the wagon.  (Reilly Dep. Tr. at 89:23-90:5.)  This discrepancy is not material.

[9] Currently pending is also a motion in limine by Defendant Frucci seeking an order barring introduction of evidence at trial regarding hand injuries allegedly suffered by Mr. Peschko. Plaintiff has not opposed this in limine motion and, in any

     B.   Plaintiff Reilly

     Robert Reilly also attended the concert on July 20, 2002,
though separately from Peschko.  Following the concert, as Reilly
and his friends waited for the parking lot to empty, they
remained by their car drinking beer and eating food.  (Reilly
Dep. Tr. at 1-10.)  During this time, Reilly noticed a commotion
several cars away.  Reilly went to his car to retrieve his
camera, and then, according to his testimony, proceeded to where
he saw Peschko being beaten.  (Id. at 47:2-48:5.)  At some point,
Reilly, who was standing approximately twelve feet from Peschko,
took a picture of the events transpiring.  At that moment,
apparently upon seeing the camera flash, Officer Borodziuk turned
towards Reilly and started towards him.  As he back-peddled away
from Borodziuk, Reilly took another picture.  Then, according to
Reilly, the officer grabbed the camera and hit Reilly with his
baton in Reilly's back side.  (Reilly Dep. Tr. at 68:11-69:23.)
Borodziuk then told Reilly to "Get the fuck out of here," at
which point Reilly retreated to a location several cars away.
(Id. at 70:6-7, 81:11.)

     After relaying the story to his friends, one of them
approached an officer about trying to have the camera returned.
While she was talking to that officer, Reilly noticed Borodziuk

_____

event, has not here alleged any hand injuries.  Accordingly, the
Court will grant Defendant's in limine motion with regard to
precluding evidence of a hand injury.

                              8

across the lot.  Reilly proceeded to walk up to the officer and
asked for his camera.  (<u>Id.</u> at 83:1-84:11.)  Borodziuk then
allegedly grabbed Reilly's left arm, and twisted it to the side
while kicking his leg out from under him to force him to the
ground.  Reilly claims he landed on his chest and head, and was
then handcuffed.  Borodziuk then picked Reilly up from the ground
and escorted him to the paddy wagon.  (<u>Id.</u> at 85:12-87-15.)

     C.   <u>Procedural History</u>

Plaintiffs Peschko and Reilly filed this action on December
6, 2002.  Plaintiff Hugg filed a separate complaint on April 16,
2003.  The actions were consolidated by Order dated August 19,
2003.  Plaintiffs have asserted claims under 42 U.S.C. § 1983,
the New Jersey Constitution, and New Jersey state law.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a
disputed issue of material fact, the court must view the evidence
in favor of the non-moving party by extending any reasonable
favorable inference to that party; in other words, "the nonmoving
party's evidence 'is to be believed, and all justifiable
inferences are to be drawn in [that party's] favor.'"  <u>Hunt v.
Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting  <u>Anderson v. Liberty</u>

9

Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is
whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably
be resolved in favor of either party."  Liberty Lobby, 477 U.S.
at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326,
329-30 (3d Cir. 1995) (citation omitted).

## III. DISCUSSION

### A.   Plaintiffs Peschko and Reilly

Plaintiff Peschko asserts the following claims against
Defendants Frucci, Martinez, Uff, Frampton, Reese, and Borodziuk:
(1) excessive force in violation of the Fourth, Fifth, and
Fourteenth Amendments (Count I); excessive force in violation of
Article I, paragraph 7 of the New Jersey Constitution (Count II);
state law claims for assault and battery (Count III), intentional
infliction of emotional distress (Count IV), and false
imprisonment (Count V).[10]  Additionally, Plaintiffs Peschko and
Reilly allege claims against Defendants Allenbach, City of Camden
and the Camden Police Department for failure to train (Count VI &
XIII) and negligent hiring (Counts VII & XV) under 42 U.S.C. §
1983.  Currently pending before the Court are motions for summary

[10] Plaintiff Reilly filed virtually identical claims against
Defendants Frucci, Frampton, Martinez and Uff – Counts VIII-XII,
XIV – but has since dismissed the complaint against those
defendants.  Those claims are still pending, however, as to
Defendant Borodziuk.

10

judgment by Defendants, Frucci, Martinez, Uff, Frampton,

Allenbach, City of Camden and the Camden Police Department.

      1.   <u>Excessive Force Claims</u>

        a.   <u>Defendants Frucci and Martinez</u>

Plaintiff Peschko asserts an excessive force claim under the

Fourth Amendment.[11]  For the reasons now explained, the Court

finds that there are questions of fact as to whether Defendants

Frucci and Martinez used excessive force on Plaintiff and,

therefore, the Court will deny the motion as to Plaintiff's

claims under the Fourth Amendment and the New Jersey

Constitution.[12]

The Fourth Amendment prohibits the use of excessive force by

a law enforcement officer.  U.S. Const. amend XIV.  <u>See</u> <u>Carswell</u>

<u>v. Borough of Homestead</u>, 381 F.3d 235, 240 (3d Cir. 2004) (citing

<u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).

> The test is an objective one, which scrutinizes the
> reasonableness of the challenged conduct.  The facts to

---

[11] Plaintiff additionally asserts excessive force claims
under the Fifth and Fourteenth Amendments.  It is well-settled,
though, that claims of excessive force during the course of an
arrest are analyzed under the Fourth Amendment.  <u>Tennessee v.</u>
<u>Garner</u>, 471 U.S. 1 (1985).  Accordingly, the Court will grant
summary judgment in favor of Defendants on Plaintiff's Fifth and
Fourteenth Amendment excessive force claims.

[12] Article 1, par. 7 of the New Jersey Constitution has been
interpreted as affording greater protections than the Federal
Constitution.  <u>See</u> <u>State v. Hempele</u>, 120 N.J. 182 (1990).
Therefore, the Court's analysis under the Fourth Amendment is
dispositive as to Plaintiff's excessive force claim under the New
Jersey Constitution.

> be examined include "the severity of the crime at
> issue, whether the suspect poses an immediate threat to
> the safety of the officer or others, and whether he is
> actively resisting arrest or attempting to evade arrest
> by flight."  Reasonableness is to be evaluated from the
> "perspective of a reasonable officer on the scene,
> rather than with the 20/20 vision of hindsight."

Carswell, 381 F.3d at 240 (quoting Graham, 490 U.S. at 396

(internal citations omitted)).  Other factors include "the

duration of the [officer's] action, whether the action takes

place in the context of effecting an arrest, the possibility that

the suspect may be armed, and the number of persons with whom the

police officers must contend at one time."  Sharrar v. Felsing,

128 F.3d 810, 822 (3d Cir. 1997).  "In evaluating reasonableness,

the court must take into consideration the fact that 'police

officers are often forced to make split-second judgments - in

circumstances that are tense, uncertain, and rapidly evolving -

about the amount of force that is necessary in a particular

situation.'"  Couden v. Duffy, 446 F.3d 483 (3d Cir. 2006)

(quoting Graham, 490 U.S. at 397).

Here, the Court holds that viewing the evidence in the light

most favorable to Plaintiff, a reasonable jury could find that

Defendants Frucci and Martinez used excessive force in effecting

Peschko's arrest.[13]

---

[13] Plaintiffs Peschko and Reilly have submitted an "expert
report" prepared by James O'Keefe, Ph.D, a former law enforcement
officer who is currently a full time faculty member of St. John's
University in the field of criminal justice and law enforcement

As recited above, Plaintiff claims that he was struck by officer Borodziuk, unprovoked, or at most because he delayed a few seconds before following the officer's command to put his balloons down.  Peschko then grabbed the baton with his left hand and pushed the officer's chest away with his right hand.  After the two stumbled to the ground, a number of other officers, including Martinez and Frucci, jumped on top of Plaintiff and proceeded to repeatedly strike him for the next two minutes while he lay motionless on the ground.  Additionally, while lying face down on the ground, Officer Martinez executed three violent knee-strikes to Plaintiff's lower right side and leg.  Plaintiff claims, and a reasonable jury could find that the video supports, that throughout this ordeal he was not resisting arrest and was fully cooperating.

While the officers were placing the handcuffs on Plaintiff, Officer Frucci placed his knee on Plaintiff's neck to keep him

procedure. (Pl. Ex. N.)  Defendant Frucci has filed a motion in limine, which Plaintiffs have unopposed, seeking to bar the testimony of Plaintiffs' "expert."  The "expert report" submitted by Plaintiffs' is replete with legal conclusions.  Obviously, any expert testimony that expresses a legal conclusion must be excluded.  See Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement, 812 F. Supp. 1376, 1378 (E.D. Pa. 1992).  However, to the extent that Plaintiffs' expert will also provide testimony as to the reasonableness of the officers' police procedures in effecting Peschko's arrest, the Court is inclined to permit such testimony.  Accordingly, the Court will deny Defendant Frucci's motion without prejudice to re-file in the event Plaintiffs seek to introduce Mr. O'Keefe's testimony at trial, as limited by the Court's holding today, in connection with the excessive force claims.

secure on the ground.  Eventually, <u>after</u> the officers handcuffed

Peschko, Plaintiff was again sprayed with pepper spray.[14]  As

Plaintiff was being escorted to the paddy wagon with his hands

cuffed behind his back, one of the officers punched him in the

back of the head.  As a result of the incident, Peschko claims he

suffered a broken right patella, two broken ribs, head

lacerations, liver injury, back and neck damages, and general

aches and pains.

The Court finds that a reasonable jury could find that the

defendant officers used excessive force in effecting Peschko's

arrest, especially considering his claim that he did not resist

arrest once on the ground.  <u>See Couden</u>, 446 F.3d at 497 (finding

excessive force as a matter of law where there was no evidence

that plaintiff "was resisting arrest or attempting to flee");

<u>Champion</u>, 380 F.3d at 903 ("[I]t also clearly established that

putting substantial or significant pressure on a suspect's back

while that suspect is in a face-down prone position after being

subdued and/or incapacitated constitutes excessive force.").

---

[14] Officer Martinez admits to having sprayed Peschko with
pepper spray before he was handcuffed, but denies spraying him
again after he was handcuffed.  This dispute of fact is material,
as a reasonable jury could find that spraying pepper spray at an
individual who is handcuffed and is not resisting constitutes
excessive force.  <u>See Champion v. Outlook Nashville, Inc.</u>, 380
F.3d 893, 903 (6th Cir. 2004) (finding it clearly established
that the use of pepper spray after arrestee was handcuffed and
hobbled was excessive) (citing <u>Adams v. Metiva</u>, 31 F.3d 375, 378
(6th Cir. 1994)).

Accordingly, the Court will deny summary judgment on the excessive force claims by Peschko against Frucci and Martinez.

> b.   Defendants Uff and Frampton

Plaintiff Peschko additionally alleges that Defendants Uff and Frampton use excessive force in effecting his arrest in violation of his rights under the Fourth Amendment and the New Jersey Constitution.

"It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." C.H. v. Olivia, 226 F.3d 198, 201 (3d Cir. 2000) (en banc) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Township, 50 F.3d 1186, 1190 (3d Cir. 1995)).  Moreover, a state official may be held responsible under § 1983 for failing to exercise supervisory authority if that official "has exhibited deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).  Accordingly, a plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant failed to employ, he must also allege "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." Bonenberger

v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997) (quoting
Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir.
1988)).  Finally, there is no vicarious, respondeat superior
liability under § 1983.  See Monell v. New York City Dep't of
Soc. Servs., 436 U.S. 658, 694 (1978); Hopp v. City of
Pittsburgh, 194 F.3d 434, 441 (3d Cir. 1999).

Here, the video of the incident shows officers Uff and
Frampton standing within several feet of Defendants Martinez,
Frucci and Borodziuk as they effected Peschko's arrest.  As the
Court held supra, a reasonable jury could find that those three
officers used excessive force during the course of the arrest.
Therefore, by failing to attempt to prevent those actions,
instead engaging in "crowd control," (Def. Uff. Reply Br. at 2;
Def. Frampton Reply Br. at 1), Defendants Uff and Frampton could
be found by a reasonable jury to have approved the other
officers' unconstitutional conduct.  Accordingly, the Court will
deny the motions for summary judgment by Defendants Uff and
Frampton on the excessive force claims.

i.   Qualified Immunity

Defendants claim that they are nonetheless entitled to
qualified immunity.

The qualified immunity inquiry requires the Court to
evaluate whether the officers' conduct violates "clearly
established statutory or constitutional rights of which a

16

reasonable person would have known." Harlow v. Fitzgerald, 457
U.S. 800, 818 (1982).  The threshold question in this inquiry is
whether the officers' conduct violated a constitutional right.
"This must be the initial inquiry." Saucier v. Katz, 533 U.S.
194, 200 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232
(1991)).  The conduct alleged by Plaintiff against these
defendants would, if established, violate constitutional rights
of which a reasonable person would have known, namely, the right
to be free from the use of excessive force in making an arrest.
If demonstrated at trial, no reasonable officer in these
officers' positions could have believed that the allegedly
excessive beatings and sprayings were lawful.

    For reasons the Court just explained, there are material
disputed facts regarding the reasonableness of the officers'
actions in effecting Peschko's arrest.  In any event, it is for a
jury to decide the "disputed historical facts material to the
qualified immunity question." Carswell v. Borough of Homestead,
381 F.3d 235, 242 (3d Cir. 2004) (citing Sharrar v. Felsing, 128
F.3d 810, 828 (3d Cir. 1997)).  Accordingly, the Court will not
hold as a matter of law at this time that Defendants Frucci and
Martinez are entitled to qualified immunity.

      2.   State Law Claims

    Lastly, Peschko has asserted state law claims for assault
and battery (Count III), intentional infliction of emotional

distress (Count IV), and false imprisonment (Count V) against
Defendants Frucci, Martinez, Uff and Frampton.  Because Plaintiff
cannot meet the verbal threshold requirement of the New Jersey
Tort Claims Act ("Act" or "Tort Claims Act"), N.J.S.A. 59:1-1 to
59:12-3, the Court will grant summary judgment in favor of
Defendants on these claims.

        "The theme of the Act is immunity for public entities with
liability as the exception.  Even where liability is present, the
Act sets forth limitations on recovery.  One is the limitation on
the recovery of pain and suffering damages."  Gilhooley v. County
of Union, 164 N.J. 533, 538 (2000) (internal citations omitted).
Under the Act:

>    No damages shall be awarded against a public entity or
>    public employee for pain and suffering resulting from
>    any injury; provided, however, that this limitation on
>    the recovery of damages for pain and suffering shall
>    not apply in cases of permanent loss of a bodily
>    function, permanent disfigurement or dismemberment
>    where the medical treatment expenses are in excess of
>    $3,600.00.

N.J.S.A. 59:9-2(d).  "[I]n order to vault the pain and suffering
threshold under the Tort Claims Act, a plaintiff must satisfy a
two-pronged standard by proving (1) an objective permanent
injury, and (2) a permanent loss of a bodily function that is
substantial."  Gilhooley, 164 N.J. 533 at 540-41; see Brooks v.
Odom, 150 N.J. 395 (1997).

Here, Defendants argue that Plaintiff has not met the Act's verbal threshold requirement as a matter of law.  The Court agrees.  Plaintiff has not submitted any opposition to Defendants' motion as to the state law claims, or presented admissible evidence relating to the permanency of his injuries. Accordingly, the Court will grant summary judgment in favor of Defendants as to Counts III, IV and V.

        3.    <u>Section 1983 Failure to Train and Negligent Hiring Claims Against Defendants Allenbach, City of Camden and Camden Police Department</u>[15]

Plaintiffs Peschko and Reilly assert claims against Defendant Allenbach, the Chief of Police at all relevant times, Defendants City of Camden and the Camden Police Department for failure to train (Counts VI and XIII) and negligent hiring (Counts VII and XV) under 42 U.S.C. § 1983.[16]

As an initial matter, the Camden Police Department will be dismissed.  It is well-established that in a section 1983 cause of action, police departments can not be sued in conjunction with municipalities because police departments are merely administrative arms of the local municipality and not separate

---

[15] Plaintiffs do not oppose Defendant Allenbach's motion for summary judgment.

[16] Though the Complaint is not a model of clarity, Plaintiffs' written opposition to the instant motions makes clear that the claims directed at Defendants Allenbach, City of Camden and the Camden Police Department are brought under 42 U.S.C. § 1983.

judicial entities. <u>Linden v. Spagnola</u>, No. 99-2432, 2002 U.S.
Dist. LEXIS 14573, at *17-18 (D.N.J. June 27, 2002); <u>DeBillis v.
Kulp</u>, 266 F. Supp. 2d 255, 264 (E.D.Pa. 2001).

    a.   <u>Failure to Train</u>

    Next, the Court finds that summary judgment should be
entered as to Defendants Allenbach and the City of Camden on
Plaintiffs' failure to train claim under Section 1983.  As a
general matter, "a local government may not be sued under § 1983
for an injury inflicted solely by its employees or agents.
Instead, it is when execution of a government's policy of custom,
whether made by its lawmakers or by those whose edicts or acts
may fairly be said to represent official policy, inflicts the
injury that the government as an entity is responsible under §
1983." <u>Monell v. Dept. of Social Services of City of New York</u>,
436 U.S. 658, 698 (1978).  In other words, a municipality can
only be held liable under Section 1983 when the municipality has
officially sanctioned or ordered the final decision. <u>City of St.
Louis v. Prapotnik</u>, 485 U.S. 112 (1987).

    Another variation of § 1983 liability exists when a
municipality fails to train, instruct, counsel, supervise and
discipline officers. <u>City of Canton v. Harris</u>, 489 U.S. 378, 387
489 U.S. at 387 (finding municipal liability under § 1983 where
supervisors failed to properly train employees and this failure
resulted in the unconstitutional deprivation of rights).  This

type of liability, referred to as "failure to train," is reserved only for those instances where the municipality acted with "deliberate indifference to the rights of persons with whom the police come into contact." <u>Id.</u> at 388.

"Findings of deliberate indifference, as a matter of law, require that there be a history of unconstitutional behavior by municipal employees.  The Supreme Court has found that municipal liability for failure to train under § 1983 cannot be inferred from a single instance of police misconduct by a non-policy making employee." <u>Labo v. Borger</u>, 2005 U.S. Dist. LEXIS 17176, at *14 (D.N.J. Aug. 15, 2005) (citing <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 813 (1985); <u>City of Canton</u>, 489 U.S. at 397 (a jury cannot infer "deliberate indifference" on the part of the trainer or supervisor from a single incident of police misconduct).

Plaintiffs' failure to train claims cannot stand as a matter of law.  To be sure, the evidence before the Court reveals a number of previous incidents of a similar nature involving at least one of the officers involved here; specifically, it is undisputed that Defendant Borodziuk was involved in at least four fatal shootings while on duty between 1999 and 2001.  However, Plaintiff has not offered any evidence demonstrating that those shootings were unjustified or unconstitutional.  Without evidence of a history of unconstitutional behavior by municipal employees,

no jury as a matter of law could find deliberate indifference by the municipality.

Additionally, there is evidence in the record that the Department responded appropriately to the incidents involving Borodziuk.  For example, following the first three shootings, the Camden City Police Department referred Officer Borodziuk to Robert L. Tannenbaum, Ph.D., a licensed psychologist in New Jersey, for interviewing and testing.  On August 16, 2001, Dr. Tannenbaum conducted seven separate tests, the results of which were summarized in a report dated August 27, 2001.  According to that report, most of the test results "fell in the above average range, including control of impulses and self-discipline."  The report also stated that "there do no appear to be any obvious reasons why he would have been involved in several shootings in a relatively short period of time apart from the circumstances."  Finally, the report concluded that Borodziuk was "Fit for Duty" and "ready to reassume his uniformed assignment."[17] (Def. Ex. E.)

Borodziuk subsequently returned to active duty and, on October 21, 2001, was involved in another fatal shooting.  After that incident, Borodziuk and the five other officers involved were referred to Andrew F. Jensen Counseling PA ("Jensen") for

_____

[17] The August 27, 2001 report also noted that an internal affairs investigation was ongoing at least as to one of the incidents involving Borodziuk.  There is no other evidence of such investigations in the record, let alone information that the prior incidents resulted in constitutional violations.

psychological treatment.  According to a report prepared by that office on October 25, 2001, three of the officers, including Borodziuk, had returned fire after being fired upon by two suspects suspected of breaking and entering.  The officers were referred to Jensen "to assist them in dealing with the trauma and the emotional responses they experienced with this traumatic event in which they were involved . . . ."  (Def. Ex. F.)  On October, 25, 2001, Jensen sent a letter to Chief Allenbach confirming "that David Borodzuik [sic] has been under my care since October 25, 2001, and will be able to return to his assigned duties as of Saturday, November 3, 2001."  (<u>Id.</u>)

Finally, Defendants have provided evidence of various training seminars and classes attended by the defendant officers providing instruction on the appropriate use of force, "sudden violence," civil disorder, defensive tactics, street survival, strategies for preventing and diffusing aggressive behavior, "verbal judo," police brutality, and disorder control.  (Def. Exs. I, J, K, L, M, & N.)

Based on the above, the Court concludes that Plaintiffs' evidence falls woefully short of demonstrating a history of unconstitutional behavior by municipal employees to which Defendants Allenbach or the City of Camden were deliberately indifferent.  For that reason, the Court will enter summary

judgment in favor of Defendants on Plaintiffs' failure to train

section 1983 claims in Counts VI and XIII.

        b.  <u>Negligent Hiring</u>

    Plaintiff Peschko also asserts a claim for negligent hiring

under Section 1983.  That claim will fail as a matter of law.

> For purposes of a legal inquiry into municipal
> liability under § 1983, . . . [a] plaintiff must
> demonstrate that a municipal decision reflects
> deliberate indifference to the risk that a violation of
> a particular constitutional or statutory right will
> follow the decision.  Only where adequate scrutiny of
> an applicant's background would lead a reasonable
> policymaker to conclude that the plainly obvious
> consequence of the decision to hire the applicant would
> be the deprivation of a third party's federally
> protected right can the official's failure to
> adequately scrutinize the applicant's background
> constitute "deliberate indifference."

<u>Bd. of Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 411 (1997)

In other words, "a showing of simple or even heightened

negligence will not suffice."  <u>Id.</u> at 407 (citing <u>Canton v.</u>

<u>Harris</u>, 489 U.S. 378, 392 (1989)).

    Here, Plaintiffs claim that Defendants Allenbach and the

City of Camden were "negligent in hiring" the officers involved

in the underlying incident.  Even if these Defendants were

negligent, as already noted, "a showing of simple or even

heightened negligence" is not sufficient for Section 1983

liability.  Accordingly, the Court will grant summary judgment in

favor of Defendants Allenbach and the City of Camden as to Counts

VII and XV.

B.    <u>Plaintiff Hugg</u>

Finally, the Court will grant summary judgment in favor of Defendants Frampton,[18] Allenbach and the City of Camden.[19]

In his complaint, Plaintiff Hugg alleges that he accompanied Peschko to the concert at the Tweeter Center on July 20, 2002. Hugg claims that during the altercation involving Peschko, he too was beaten by the officers, resulting in permanent physical injury and emotional distress.  (Sec. Am. Compl. ¶¶ 9-11.)  In connection with the instant summary judgment motions, Plaintiff Hugg has not submitted, through counsel, any opposition, and the Court has before it nothing in the record shedding light on Hugg's allegations.[20]

As to Defendants Allenbach and the City of Camden, the Court will grant summary judgment for reasons already explained. Additionally, the Court will grant summary judgment in favor of Defendant Frampton on all state law tort claims, also for reasons set forth above.

---

[18] Though Defendant Frampton's papers reference only the Peschko Complaint, the proposed order seeks summary judgment as to "any and all claims against him in this litigation." Plaintiff Hugg was thus given adequate notice of the pending motion by Frampton.

[19] For reasons already stated, summary judgment will also be entered in favor of the Camden Police Department.

[20] As noted above, Plaintiff Hugg has voluntarily dismissed his complaint as to Defendants Frucci, Martinez and Uff.

Plaintiff Hugg has also asserted excessive force claims under the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution against Defendant Frampton.[21]  (Counts I and II.)  Plaintiff Hugg has provided no evidence that Defendant Frampton used any force towards Plaintiff Hugg during the course of the underlying incident, or in effecting Hugg's arrest. Therefore, the Court will grant summary judgment in Defendant Frampton's favor on Plaintiff's excessive force claims.

The sole remaining claim by Plaintiff Hugg against Defendant Frampton is the allegation in Count VIII that Frampton lied in an incident report relating to Hugg's arrest, thereby depriving Plaintiff of "due process of law, the right of confrontation and the right to have the charges against him litigated in a manner consistent with the requirements of law."  (Compl. at 9, ¶ 4.) Plaintiff Hugg has not opposed Defendants Frampton's summary judgment motion, and has provided no evidence of a constitutional violation arising from reports or statements made by Frampton which are false.  Accordingly, the Court will grant summary

---

[21] Plaintiff Hugg additionally asserts excessive force claims under the Fifth and Fifteenth Amendments.  (Compl. at 5, ¶ 15.)  The Court will assume that Plaintiff intended to assert claims under the Fifth and <u>Fourteenth</u> Amendments.  The mistake is immaterial, however, as claims of excessive force to effect an arrest are analyzed under the Fourth Amendment.  <u>Tennessee v. Garner</u>, 471 U.S. 1, <u>supra</u>.  Accordingly, the Court will grant summary judgment in favor of Defendants on Plaintiff Hugg's Fifth and Fourteenth Amendment excessive force claims.

judgment in favor of Defendant Frampton as to Count VIII of Hugg's Complaint.

## IV.  CONCLUSION

In sum, the Court holds as follows:

- the Court will grant summary judgment in favor of Defendant City of Camden Police Department as to all claims;

- the Court will deny summary judgment as to Plaintiff Peschko's excessive force claims under the Fourth Amendment and the New Jersey Constitution contained in Counts I and II;

- the Court will grant summary judgment in favor of Defendants on Plaintiff Peschko's Fifth and Fourteenth Amendment excessive force claims contained in Count I;

- the Court will grant Defendant Frampton's in limine motion in part, and Plaintiffs Peschko and Reilly will be barred at trial from introducing expert testimony expressing legal conclusions.  The Court will also bar any evidence of a hand injury sustained by Peschko. The Court will deny the in limine motion in part, without prejudice to Defendant's right to re-file in the event Plaintiffs seek to introduce expert testimony at trial in connection with Plaintiffs' excessive force claims, regarding the reasonableness of the officers' police procedures in effecting Plaintiffs' arrests;

27

- the Court will grant summary judgment in favor of Defendants as to state law claims asserted by Plaintiffs Peschko and Reilly in Counts III-V, X-XII and XIV; and

- the Court will grant summary judgment in favor of Defendant Frampton as to all claims asserted by Plaintiff Hugg; and

- the Court will grant summary judgment as to Defendants Allenbach and the City of Camden on the failure to train and negligent hiring claims under Section 1983 asserted by Plaintiffs Peschko and Reilly in Counts VI, VII, XIII and XV, and by Plaintiff Hugg in Counts V & IX.

Trial upon the remaining claims will be scheduled to commence in September, with a trial notice to be sent shortly.

**June 28, 2006**                    **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                      U.S. District Judge